**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Kenny Ray JOHNSON, Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 29, 2006.

Filed Oct. 6, 2006.

Reargument Denied Dec. 1, 2006.

Karl E. Rominger, Carlisle, for appellant.

Jaime M. Keating, Chief Deputy Dist. Atty., Carlisle, for Com., appellee.

BEFORE: LALLY–GREEN, TODD, and POPOVICH, JJ.

OPINION BY LALLY–GREEN, J.:

¶ 1 Appellant, Kenny Ray Johnson, appeals from the trial court's April 12, 2005 judgment of sentence. We affirm.

¶ 2 The trial court recited the procedural history and found the following facts:

The defendant was charged with numerous crimes as a result of his sexual misconduct while on duty as a Middlesex Township Police Officer. After hearing several days of testimony, the jury was asked to consider three counts of rape, two counts of involuntary deviate sexual intercourse, three counts of sexual assault, three counts of prostitution, four counts of bribery in official and political matters, two counts of official oppression, two counts of obstructing administration of law or other governmental function, two counts of tampering with public records, and one count of criminal attempt to [sic] prostitution. He was acquitted of all charges except for two counts of bribery.

He was sentenced to serve not less than 9 nor more than 23 months in the county prison on one count and to serve a consecutive period of intermediate punishment on the other.

. . .

We will start by recounting the evidence in the light most favorable to the Commonwealth. Middlesex Township is teeming with truck stops, motels and prostitutes. As a patrol officer, the defendant often took women into custody who were suspected of prostitution. Rather than charging the women, he would engage in oral and/or vaginal sex with them.

The defendant was convicted of bribery as a result of encounters with Ms. S. and Ms. C. The encounter with Ms. S. took place after the police responded to a noise complaint at a local motel. When they entered her room, Ms. S. was naked with a man she had just met. After being taken into custody by the other officers, she was interviewed by the defendant at the police station. He let her know that he found her to be very attractive. He also suggested the if she had "some kind of sexual contact" with him, he would forego the filing of drug charges against her. Because of a prior drug charge, Ms. S. "was very worried."

The following excerpts from testimony describe what next occurred:

Q. So what was the agreement, that you were going to have sex right there in the station? What was the agreement?

A. No. The agreement was that he was going to take me back to my vehicle.

Q. Where was your vehicle?

A. It was still at the Holiday Inn. Then after that, he was going to follow me to my home.

Q. And did he do that?

A. Yes.

. . .

Q. What happened at your home?

A. We both got out of the car, and we got into my town house. We just sat there. Passes were being made. I was extremely worried about the charges being filed. He was trying to reassure me that this was only going to be a misdemeanor charge against me. I don't need another felony charge on my record, and we had intercourse.

Q. Tell me about the intercourse. What type of intercourse, oral or vaginal?

A. Both.

. . .

Q. [Ms. S.], why did you have sex with him that night?

A. Because I didn't want to be charged with another felony cocaine charge. Even though he knew that the men I was with admitted to having that cocaine, he still was going to give me a ticket for cocaine charges.

No charges were ever filed against Ms. S.

Ms. C. works by day as a Dauphin County Probation Officer. She was recruited by Cumberland County Detectives to participate in an undercover operation. She and another undercover operative checked into a room at a Middlesex Township motel. They were posing as a prostitute and her "John." The room had been wired for both audio and video. Defendant was directed by county dispatch to respond to the motel to investigate a blonde running around the hallway in her panties and her bra.

The defendant arrived at Ms. C.'s room to investigate. He instructed the "John" to accompany him into the hallway. The witness then went on to tell what occurred:

He wanted me to explain how I met the young lady in the hotel room. I told him that a friend of mine told me that you can meet girls at the Flying J, that they were easy to pick up and so forth and so on. I told him that I made contact, eye contact, with the young lady in the parking lot area. The next thing we know, we were here at the hotel room. He further asked me how much money was involved. I told him $40.00 for oral sex.

After receiving the above information from the "John," the defendant told him to leave.

The defendant's initial response was "I'm gonna have to arrest you." Ms. C.'s willingness to do "whatever I need to do" eventually changed the defendant's mind.

It is clear that the defendant intended to avail himself of Ms. C.'s professional services as consideration for not arresting her. The following exchange shed light on those intentions:

MS. C.: I'll do whatever I need to do not to go to jail, but please do not take me to jail. I can't go to jail.

DEFENDANT: Yeah, huh. Let me go check on something, I'll see what I can do okay?

MS. C.: What do you have to check on?

DEFENDANT: **Well I still got this guy here going to my station.** Well … alright, let me go get another patrol to meet him at the station, instead of me taking you over there okay.

MS. C.: You're gonna offer to take me over there?

DEFENDANT: No.

MS. C.: Okay.

DEFENDANT: I'm gonna work it out.

MS. C.: Okay.

DEFENDANT: Okay.

MS. C.: Mm-hmm. Whatever I need to do I'll work it out. I can't go to jail.

DEFENDANT: **You can't well we'll see.**

MS. C.: Should I just wait here?

DEFENDANT: Yeah, yeah just wait here.

The defendant then left the room. He had no intention of checking the "John" because he had previously sent him home. Rather, he intended to make himself available to spend time alone with Ms. C. He went to his patrol vehicle to advise county control that the call had been cleared and that he would be out of his vehicle on his pager. He then "left" the motel, doubled back and parked in the rear where his car would not be visible from the road. Using her room key, he re-entered Ms. C.'s room, unobserved, through a back door of the motel.

After he returned to her room, the defendant told Ms. C. that the "John" had gone to the police station. Ms. C. continued to beg the defendant not to arrest her, offering to do anything for him. The defendant responded: "I'm just trying to figure out what I really want." The deal was concluded with the following exchange:

MS. C.: Do you want a blow job before you go?

DEFENDANT: No.

MS. C.: No.

DEFENDANT: Well I think that would be nice.

MS. C.: Yeah.

DEFENDANT: Actually I think I want a little more.

MS. C.: How much more?

DEFENDANT: A lot more.

MS. C.: Now?

DEFENDANT: Yeah.

MS. C.: Right now?

DEFENDANT: Uh-huh.

As the defendant began undoing his trousers, Ms. C.'s back-up entered the room and placed him under arrest.

Trial Court Opinion, 8/25/05, at 1, 3–7 (footnotes omitted) (emphasis in original).

¶ 3 Appellant raises a single issue for our review:

Is the acceptance of sexual favors in return for the exercising of discretion not to arrest sufficient to sustain Appellant's convictions for bribery under [18 Pa.C.S.A. § 4701(a)(1) ] of the Crimes Code[?]

Appellant's Brief at 5.[1]

¶ 4 Appellant argues that he did not receive a pecuniary benefit and, therefore, should not have been convicted of bribery. The Pennsylvania Crimes Code defines bribery as follows:

§ 4701. Bribery in official and political matters

(a) **Offenses defined.**—A person is guilty of bribery, a felony of the third degree, if he offers, confers or agrees to confer upon another, or solicits, accepts or agrees to accept from another:

(1) any pecuniary benefit as consideration for the decision, opinion, recommendation, vote or other exercise of discretion as a public servant, party official or voter by the recipient;

(2) any benefit as consideration for the decision, vote, recommendation or other exercise of official discretion by the recipient in a judicial, administrative or legislative proceeding; or

(3) any benefit as consideration for a violation of a known legal duty as public servant or party official.

18 Pa.C.S.A. § 4701(a).

¶ 5 In the instant matter, the Commonwealth initially charged Appellant with violations of all three subsections of § 4701(a). At the Commonwealth's request, however, the trial court charged the jury only on § 4701(a)(1). Subsection 4701(a)(1) is distinct from § 4701(a)(2) and

(3) in several ways, including that it specifies receipt by the defendant of a **pecuniary** benefit. Appellant's sole argument on appeal is that his receipt of oral and vaginal intercourse does not constitute a pecuniary benefit.

¶ 6 Appellant's argument, therefore, presents us with a question of statutory construction. "In evaluating a trial court's application of a statute, our standard of review is plenary and is limited to determining whether the trial court committed an error of law." *Commonwealth v. Stevenson,* 850 A.2d 1268, 1271 (Pa.Super.2004). In interpreting § 4701(a), we are mindful of the following:

§ 1921. Legislative intent controls

(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

(b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

1 Pa.C.S.A. § 1921.

¶ 7 We first turn to the pertinent statutory definition of pecuniary benefit. For purposes of § 4701(a)(1), pecuniary benefit is defined as follows:

"**Pecuniary Benefit.**" Benefit in the form of money, property, commercial interests or anything else the primary significance of which is economic gain.

18 Pa.C.S.A. § 4501.

¶ 8 Appellant argues that the Legislature's use of the word "pecuniary" in § 4701(a)(1) evinces the Legislature's intent to criminalize only those transactions

---

1. Appellant included this issue in a timely concise statement of matters complained of on appeal. Pa.R.A.P. 1925(b).

in which the public servant receives money. Appellant does not dispute that he accepted sexual favors from suspected prostitutes in exchange for overlooking their criminal offenses. We must, therefore, determine whether Appellant's receipt of free sexual favors from suspected prostitutes constitutes the receipt of something whose primary significance is economic gain.

¶ 9 The record is clear that, in the ordinary course of events, Appellant would have had to pay $30.00 to $50.00 for sexual favors from a local prostitute. The transaction between Appellant and Ms. S. and the agreed upon transaction between Appellant and Ms. C. differed from the ordinary course of events only insofar as Appellant arranged to receive their services for free in exchange for his overlooking their criminal offenses. Said another way, Appellant exercised his discretion as a police officer in order to procure for free a service that would normally cost money. We, therefore, conclude that the benefit to Appellant in return for his discretion was primarily economic.

¶ 10 Since Appellant received a pecuniary benefit within the meaning of § 4701(a)(1), his argument fails. Accordingly, we affirm the judgment of sentence.

¶ 11 Judgment of sentence affirmed.